UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELTA ALCOHOL DISTRIBUTORS,

    Plaintiff,

v.

    Case No. 13-cv-14829
    Honorable Laurie J. Michelson
    Magistrate Judge David R. Grand

ANHEUSER-BUSCH INTERNATIONAL,
INC., and ANHEUSER-BUSCH, LLC,

    Defendant.

_____/

**OPINION AND ORDER ON DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT [17]**

Plaintiff distributed beer in Iraq for Anheuser-Busch, International, Inc., from 2011 to 2012. After Anheuser-Busch International terminated the relationship, Plaintiff filed this action for defamation, fraud, and misappropriation of trade secrets, among other torts. Defendants Anheuser-Busch International and Anheuser-Busch, LLC, seek to dismiss the case, citing a forum selection clause in favor of Geneva, Switzerland, in their distribution agreement with Plaintiff. The Court agrees that the parties' bargained-for choice of forum requires dismissal of Plaintiff's Amended Complaint. Therefore, Defendants' Motion to Dismiss the Amended Complaint (Dkt. 17) is GRANTED and the Amended Complaint is DISMISSED.

**I. BACKGROUND**

    **A. Procedural History**

Delta Alcohol Distributors ("Delta") filed this action in November 2013. (Dkt. 1.) In December 2013, Defendants filed a Motion to Dismiss on the basis of forum non conveniens and for failure to state a claim upon which relief could be granted. (Dkt. 6.) Five days after the

deadline to respond, Plaintiff filed a Motion for Leave to File First Amended Complaint (Dkt. 13), and a First Amended Complaint (Dkt. 14). Although Plaintiff's time to file an amendment as of right under Federal Rule 15(a)(1)(B) had expired, the Court granted the motion and denied as moot Defendants' Motion to Dismiss. (Dkt. 15.)[1] The Court added, "Plaintiff's counsel is cautioned to carefully abide by pleading deadlines under the Federal Rules going forward." (*Id.*)

Defendants filed the present Motion to Dismiss the Amended Complaint on February 4, 2014. (Dkt. 17.) Plaintiff's response brief was due on or before February 28, 2014. *See* E.D. Mich. LR 7.1(e)(1)(B). On March 21, 2014, Plaintiff having failed to file any response, the Court ordered Plaintiff to show cause why the motion should not be granted as unopposed. (Dkt. 25.) On March 25, 2014, Plaintiff filed a Motion to Extend/Enlarge Time to File Answer to Defendant's Motion to Dismiss the Amended Complaint, with its Response in Opposition to the Motion to Dismiss attached as an exhibit. (Dkt. 26.) Defendants immediately opposed Plaintiff's motion for extension. (Dkt. 27.) Then on April 11, 2014, Defendants filed a Reply Memorandum of Law in support of their Motion to Dismiss. (Dkt. 28.) The Court heard oral arguments on the motion at a hearing on June 19, 2014.

**B. Allegations of the Amended Complaint**

The following allegations are from the First Amended Complaint. (Dkt. 14, hereinafter "Am. Compl.")

On August 19, 2011, Delta and Anheuser-Busch[2] entered into an agreement for Delta to market Anheuser-Busch's products in Iraq ("Letter Agreement").[3] (Am. Compl. ¶ 32.) Before the

---

[1] The Honorable Terence G. Berg was then presiding; this case was reassigned to the undersigned on May 6, 2014. (*See* Dkt. 29.)
[2] The First Amended Complaint does not distinguish between the two Defendants, instead referring to them collectively as "Anheuser-Busch." (Am. Compl. at 1.)

2

Letter Agreement was executed, "Anheuser-Bush misrepresented to Delta their intentions regarding the full contract, rewards, and bonuses for sales." (Am. Compl. ¶ 28.) Specifically, "to induce Delta to accept a Letter-Agreement Anheuser-Bush promised Delta bonus monies on a then-existing bad faith intent to break the promise." (Am. Coml. ¶ 29.) Anheuser-Busch's intent was "to mislead Delta into accepting a brief Letter-Agreement with continuing brief extensions while realizing large profits from Delta's efforts, then strategically terminating Delta on bogus charges regarding [the Foreign Corrupt Practices Act]," thus avoiding payment of the promised bonuses as well as "stealing Delta's trade secrets through a bogus bribery investigation." (Am. Compl. ¶¶ 30–31.)

The Letter Agreement was to automatically terminate effective March 31, 2012, unless Delta placed an offer after that date and Anheuser-Busch accepted it, and no new agreement had been proposed. (*See* Am. Compl. ¶ 33; Letter Agreement ¶ 6.) In that case, the Letter Agreement would be "extended automatically for further periods of three (3) months, commencing on 1st April and expiring automatically at the end of each new term," absent a new proposed agreement. (*Id.*)

Delta and Anheuser-Busch continued to operate under the Letter Agreement until November 28, 2012, when Anheuser-Busch terminated the relationship. (*See* Am. Compl. ¶ 35.) While the Letter Agreement provided for termination with or without cause (Letter Agreement ¶ 6), Anheuser-Busch based the termination on a clause of the Letter Agreement that prohibited

---

[3] Defendants filed a copy of the Letter Agreement in support of their Motion to Dismiss. (Dkt. 20, Pinsky Decl., Ex. A [hereinafter Letter Agreement].) "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)) (internal quotation marks omitted).

Delta from violating the Foreign Corrupt Practices Act ("FCPA") of the United States "or similar laws of other countries." (*See* Am. Compl. ¶¶ 34–35.)

After this termination, in "December 2012, and thereafter, Anheuser-Busch made and published false defamatory statements which precisely stated that Delta Alcohol Distributors paid bribes and committed the serious criminal offense of violation of the Foreign Corrupt Practices Act." (Am. Compl. ¶ 36.) These statements "disclosed, and/or communicated, and/or 'leaked,' and/or told Iraqi official(s), and/or Iraqi business persons, and/or Delta's competitors, and/or Lebanese competitors, and/or other government officials and business interests that Delta paid bribe(s) in Iraq in violation of FCPA." (Am. Compl. ¶ 47.)

Also after terminating the Letter Agreement, "under the guise of a bribery investigation against Delta," Anheuser-Busch sought and acquired Delta's trade secrets "by conducting investigations with Iraqi officials, Iraqi persons, Iraqi and Arab businessmen, and others pursuant to Anheuser-Bush's false statements that Delta violated the FCPA, and Iraqi bribery law," and other wrongful means. (Am. Compl. ¶¶ 74–75.) Anheuser-Busch "used Delta's trade secrets to distribute its products in Iraq." (Am. Compl. ¶ 40.) These trade secrets included "knowledge regarding Iraqi officials," "Iraqi informants for marketing and use in covert intelligence gathering for the marketing of alcohol," "strategies for employees' safety involved in alcohol business in an Islamic Republic," "secrets in gaining advantage over its competitors," "knowledge of Iraqi community leaders," "knowledge on religious officials for marketing and use in covert intelligence gathering for the marketing of alcohol and employees' safety in an Islamic Republic and gaining advantage over its competitors," "compilation of business design(s) based on unknown 'or not readily ascertainable' business formula(s) and model(s) designed by Delta to dominate the entire Iraqi alcohol market," and "business formula(s) designed by Delta to gain

4

advantage over its competitors in marketing alcohol in Baghdad and Northern Iraq." (Am. Compl. ¶ 61.)

The First Amended Complaint alleges five counts: defamation, misappropriation of trade secrets, unjust enrichment, fraud, and fraudulent inducement. (Am. Compl. at 9–18.)

## II. ANALYSIS

### A. Delta's Motion to Extend Time to Respond

Requests for extensions of time are governed by Federal Rule of Civil Procedure 6. The Rule provides, in relevant part, that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time. . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). The Supreme Court has said that "'excusable neglect' under Rule 6(b) is a somewhat elastic concept." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993) (footnote omitted). Thus, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," extensions of time under Rule 6(b)(1)(B) are "not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* (citation omitted). The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

Applying the factors identified by the Supreme Court in *Pioneer Investment*, the Sixth Circuit has held that the governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l. Inc.*, 467 F. 3d 514, 522 (6th Cir. 2006).

The reason given for Delta's late filing—that "counsel has lost two of its main support personnel with the last two weeks"—does not establish good cause for a four-week delay in filing a response to a dispositive motion. (*See* Dkt. 26 at ¶ 12.) Moreover, this is not the first time Delta has missed a deadline in this case, and the Court previously cautioned Delta to be mindful of deadlines. (*See* Dkt. 15.) On the other hand, Defendants do not indicate that there is any danger of prejudice to them if the motion for extension is granted. (*See* Dkt. 27.) And in general, briefs in response to a dispositive motion are of assistance to the Court, so permitting the filing of a response may promote judicial efficiency.

The Court does not take lightly a party's failure to comply with deadlines. Nonetheless, taking all of the circumstances into account, Delta's Motion to Extend/Enlarge Time to File Answer to Defendant's Motion to Dismiss the Amended Complaint (Dkt. 26) is GRANTED.

### B. The Parties' Forum Selection Clause

Defendants argue that a forum-selection clause in the parties' distribution agreement requires dismissal of this action. (Mot. at 1–2.) Plaintiff responds that it is premature to consider this motion without affording the opportunity for discovery (Opp. at 1–2) and that the forum selection clause does not apply because the claims are based on actions Defendants took "when there was absolutely no relationship whatsoever between the parties, thus the Letter Agreement is totally irrelevant" (Opp. at 5).

#### 1. *Timing of the Motion*

Plaintiff's argument that the motion is premature is not persuasive. A motion to dismiss for forum non conveniens is properly brought at the earliest possible time, and courts do not typically permit discovery before hearing such motions. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) ("Requiring extensive investigation would defeat the purpose of their

6

motion."); *Barak v. Zeff*, 289 F. App'x 907, 915–16 (6th Cir. 2008) (agreeing with the district court that allowing discovery "would establish a perverse incentive" that would "encourage other plaintiffs to file their lawsuits in, what they know to be, inconvenient forums with the hope that the court will allow them to engage in discovery in the forum even though the case must be transferred elsewhere"); 14D Wright and Miller et al., *Fed. Prac. & Proc.* § 3828 (4th ed.) ("Courts normally will deny a motion for extensive discovery on a forum non conveniens motion and often will decide the issue on affidavits alone. This approach is consistent with the purpose of the forum non conveniens doctrine, which is to protect defendants and the federal courts from expending resources on matters having little connection to this country from litigation in an inconvenient forum.").

Moreover, Delta has not specifically identified what information it hopes to discover that could change the forum analysis. Although Delta argues that Anheuser-Busch's motion relied on "unauthenticated documents which have no foundation" (Opp. at 1–2), Delta does not appear to seriously contend that it did not sign the Letter Agreement. In fact, the Amended Complaint relies on and quotes from the Letter Agreement. (*See* Am. Compl. ¶¶ 33–35.) Moreover, Defendants provided foundation for the Letter Agreement in a declaration by Defendants' in-house counsel attached to their Reply. (*See* Dkt. 28-1, Reply Decl. of Maria Rocha Barros.) The Court finds the Motion is timely.

### 2. *Scope of the Forum Selection Clause*

The Letter Agreement entered into by Plaintiff and Defendant Anheuser-Busch International, Inc., in August 2011 contains the following provision:

> **Competence and Applicable Law**. All agreements executed with the Buyer are governed by Swiss law, with the exclusion of the United Nations Convention on Contracts for International Sale of Goods and the principles of international

>private law. All disputes shall be submitted to the exclusive jurisdiction of the courts of Geneva.

(Letter Agreement ¶ 7.) Plaintiff argues that the forum selection clause is irrelevant to this action because the tortious conduct underlying its claims occurred before the Agreement was signed or after it was terminated. (Opp. at 5–9.) Defendants argue that although "Delta has tried to plead around the clause," it "cannot circumvent the Agreement's forum-selection clause simply by claiming that the offending conduct occurred outside the contract term." (Mot. at 1, 8.)

In a diversity suit, enforceability of a forum selection clause is governed by federal law. *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Defendants rely on a case from another district court in this Circuit, in which the court rejected an argument similar to Delta's. (*See* Mot. at 8.) The forum selection clause at issue in *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272 (M.D. Tenn. 1996), provided that "[a]ny legal proceeding by either party against the other shall be filed only in the United States District Court for the Northern District of Illinois, Eastern Division, or the Circuit Court of Cook County Illinois." *Id.* at 276. The plaintiff argued that the clause did not apply because the agreement between the parties was terminated before the defendant's allegedly tortious activity took place. *Id.* at 275. The plaintiff's claim against the defendant for tortious interference of contractual relations alleged that the defendant's termination of its distributorship agreement with the plaintiff caused a third party to withdraw its intention to use plaintiff as a distributor. *Id.* at 274. The court found that "the termination of the agreement between the parties is the focal point of the facts out of which the tort action arises," and that "[t]he choice of forum provision was not drafted in a manner indicating application only to those actions in which the agreement plays an integral role." *Id.* at 275–76. Because "the plaintiff's action is intertwined with the agreement," the termination of the agreement did not invalidate the forum selection clause. *Id.* at 276.

Plaintiff argues that *Allied Sound* should be distinguished from this case because here "the parties limited the jurisdiction of Swiss Courts to agreements and disputes therefrom during a relationship." (Opp. at 7.) But the basis for this statement is not at all clear. Although the sentence immediately preceding the forum selection clause, regarding applicable law, does state that "agreements" are governed by Swiss law, the forum selection clause does not contain any such limitation. In fact, its language is broad: "*All disputes* shall be submitted to the exclusive jurisdiction of the courts of Geneva." (Letter Agreement ¶ 7 (emphasis added).)

Another district court in this Circuit found that a forum selection clause applied to tort claims although it was paired with a choice-of-law clause that appeared more limited. *See Micropower Group v. Ametek, Inc.*, 953 F. Supp. 2d 801 (S.D. Ohio 2013). In *Micropower*, the defendant purchased and distributed the plaintiff's high frequency chargers for several years. *Id.* at 805. After the defendant told the plaintiff it was terminating their relationship in order to sell its own chargers, the plaintiff sued for fraud and misappropriation of trade secrets, among other tort claims. *See id.* at 804–805. The defendant sought dismissal based on a forum selection clause in its purchase orders, which stated: "Irrespective of the place of performance, this Order shall be construed and interpreted according to the Laws of the Commonwealth of Pennsylvania. The exclusive forum for adjudication of any disputes shall be the federal or state courts of the Commonwealth of Pennsylvania . . . ." *Id.* at 807. The court rejected the plaintiff's argument that this clause applied only to claims related to the purchase order, finding that "while the choice of law sentence is narrow in that sense, only providing for the choice of law regarding disputes about the purchases, the language in the choice of forum sentence is very broad." *Id.* The court also found that "courts have generally held that when the relationship between the parties is contractual, the creative pleading of alternative, non-contractual claims does not suffice to

9

circumvent the forum-selection clause if the forum selection clause is broad enough to include them," and "[j]ust because claims can exist independent of a contract does not mean that they are not governed by a contract when one exists." *Id.* at 808–809.

The case law reviewed by the Court supports broad application of the forum selection clause although Delta's claims are not for breach of the contract and even if the alleged tortious conduct occurred before the contract commenced or after it terminated. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("all of the plaintiffs' claims arise from the contractual relationship and are therefore within the scope of the forum selection clause); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) ("where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain"), *cert. denied,* 464 U.S. 938 (1983); *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, 2:04-CV-0916, 2005 WL 1038842 (S.D. Ohio May 3, 2005) ("Most litigation concerning the scope of a forum selection clause concerns whether a clause covering 'all disputes' arising out of a contract should be construed to cover tort claims in addition to contract claims. In those cases, courts have held that where a tort claim is substantially related to the contract claim in terms of factual and legal issues, the forum selection clause covers the tort claim as well."); *Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989) (rejecting plaintiff's argument that the forum selection clause became unenforceable when defendant terminated the agreement because "[t]ermination of a contract does not divest parties of rights and duties already accrued."). Plaintiff has not cited any case law to the contrary.

Moreover, Plaintiff's own pleadings belie its argument that the Letter Agreement is irrelevant. Plaintiff says in the Amended Complaint that "[t]his action arises out of a relationship

between Delta Alcohol Distributors and Anheuser-Busch for Delta's distribution of alcoholic products in dangerous and volatile Iraq between August 19, 2011 to November 28, 2012." (Am. Compl. ¶ 3.) And although the Amended Complaint states repeatedly that the alleged tortious conduct took place before the contract was executed and after it was terminated, this is not entirely plausible. For example, it does not make sense that Defendants conducted an investigation into whether Delta violated the FCPA *after* terminating the Agreement for FCPA violations. (*See* Am. Compl. ¶¶ 34–35, 74–75.)

Regardless, Plaintiff's allegations—that Defendants fraudulently induced Plaintiff to enter into the Letter Agreement, misappropriated trade secrets during their investigation related to the termination of the Letter Agreement, and made defamatory statements about the reason for terminating the Letter Agreement—are so intertwined with the Letter Agreement that application of the Agreement's forum selection clause should have been foreseen by Plaintiff, a sophisticated party. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 583 (2013) ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."); *Allied Sound*, 934 F. Supp. at 276 ("When an action arises from a contract or contractual relationship between two parties, the choice of forum clause in that contract governs."). Accordingly, the Court will apply the parties' Letter Agreement's choice of forum clause to these claims.

### 3. *Forum Non Conveniens*

Having found that this action is within the scope of the parties' forum selection clause, the Court turns to whether the clause requires dismissal of this case. Where a forum selection clause points to foreign forum, the appropriate way to enforce it is through the doctrine of forum non conveniens. *See Atl. Marine*, 134 S. Ct. at 580.

Generally, "dismissal on forum non conveniens grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil* . . . reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citing *Gilbert*, 330 U.S. at 508–509, and *Reyno*, 454 U.S at 256 n.23). But where there is an applicable forum-selection clause, the calculus changes. The Supreme Court recently held in a unanimous decision that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum," and "may consider arguments about public-interest factors only." *Atl. Marine*, 134 S. Ct. at 582.[4]

First, the courts of Geneva, Switzerland, are an available and adequate alternative forum. This requirement is satisfied if the defendant is amenable to process in the foreign jurisdiction. *Wong*, 589 F.3d at 830 (citing *Reyno*, 454 U.S. at 255 n.22). A party that has consented in a forum selection clause to submit to the jurisdiction of a foreign court is amenable to process there. *See id.* at 831. The parties here agreed that "[a]ll disputes shall be submitted to the exclusive jurisdiction of the courts of Geneva." (Letter Agreement ¶ 7.) And at the hearing, counsel for Defendants indicated that Defendants would submit to jurisdiction of a valid claim in Geneva and would cooperate if a valid judgment were obtained there. *Cf. Barak*, 289 F. App'x at

---

[4] Although that case concerned a motion to transfer under 28 U.S.C. § 1404(a), the Court noted that "because both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum selection clause pointing to a federal forum." *Atl. Marine*, 134 S. Ct. at 580.

910 (finding an adequate alternative forum where the district court dismissed the suit on the condition that defendant submit to the jurisdiction of the Spanish courts, waive any statute of limitations defense, and stipulate that United States courts may enforce any final judgment in favor of plaintiff).[5]

Second, public interest considerations do not weigh against trial in Geneva. The public interest factors to be considered on a motion for forum non conveniens include "congestion of the courts; the burden of jury duty 'upon the people of a community which has no relation to the litigation'; the 'local interest in having localized controversies decided at home'; and, in a diversity case, the advantage of holding the trial 'in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" *Barak*, 289 F. App'x at 910 (citing *Gilbert*, 330 U.S. at 508–09). As to these factors, Defendants argue that the Supreme Court has said they "will rarely defeat" a forum non conveniens motion and thus "the practical result is that forum selection clauses should control except in unusual cases." (Opp. at 10–11 (quoting *Atl. Marine*, 134 S. Ct. at 582).) Defendants do not address the public interest factors individually except to state that "the public interest of conservation of judicial resources and respect for the freedom of sophisticated parties to contract weigh in favor of dismissal." (*Id.* at 11.) Plaintiff does not address the public interest factors at all. The Court notes that under the Letter Agreement, the parties' agreement is governed by Swiss law, which weighs in favor of the Geneva courts. (*See* Letter Agreement ¶ 7.) And although the Amended Complaint conclusorily alleges that "Michigan is the place where the conduct causing the injury occurred" (Am. Compl. ¶ 11), it

---

[5] At the time of the hearing, counsel for Defendants was unable to agree to waive any statute of limitations defenses and, instead, stated that Delta would need to make a relation-back argument to the Geneva court. Plaintiff did not raise any statute of limitations issues and thus, the Court will enforce the parties' agreed upon choice of forum clause.

appears to the Court that most of the conduct alleged occurred in Iraq. Therefore, it is not obvious why the people of Michigan would have any interest in Plaintiff's claims, and the Court declines to speculate further.

As the Supreme Court recently explained, "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain" by enforcing a forum-selection clause, because it "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." *Atl. Marine*, 134 S. Ct. at 583. In this case, the Court finds that the parties should be held to their bargained-for forum selection clause.

### C. Failure to State a Claim

Because the Amended Complaint must be dismissed under the parties' forum selection clause, the Court will not address whether Delta adequately stated a claim for relief.

## III. CONCLUSION

For the reasons stated, Delta's Motion to Extend/Enlarge Time to File Answer to Defendant's Motion to Dismiss the Amended Complaint (Dkt. 26) is GRANTED, Defendants' Motion to Dismiss the Amended Complaint (Dkt. 17) is GRANTED, and the Amended Complaint (Dkt. 14) is DISMISSED.

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE

Dated: June 23, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 23, 2014.

                                                  s/Jane Johnson
                                                  Case Manager to
                                                  Honorable Laurie J. Michelson